UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MITCHELL C. KINDER                                                         PLAINTIFF


v.                                            CASE NO. 4:06-CV-1534 GTE


EATON CORPORATION and
BROADSPIRE SERVICES, INC.                                          DEFENDANTS


**ORDER ON MOTIONS FOR JUDGMENT**

Presently before the Court is Defendants' Motion for Summary Judgment.

**I.      Background**

The Employer Plan Sponsor and Plan Administrator of the Eaton Long Term Disability

Plan is Eaton Corporation. [R.43]  The Eaton Long Term Disability Plan ("the Plan") is self-

insured. [R.43]  The Plan has specifically designated Broadspire as the Claims Administrator. [R.

A participant is eligible for monthly long term disability benefits if he has a covered

disability as defined under "Covered Disability" and he is under the continuous care of a

physician who verifies, to the satisfaction of the Claims Administrator, that he is totally disabled.

[R.31]  The LTD Plan defines "Covered Disability" as follows:

> You are considered to have a covered disability (see "Disabilities NOT Covered"
> for exceptions) under the Plan if:
>
> •        During the first 24 months of such disability, inclusive of any period of
>          short term disability, you are totally and continuously unable to perform
>          the essential duties of your regular position with the Company, or the
>          duties of any suitable alternative position with the Company ["First Tier"];
>          and

- During the continuation of such total disability following the first 24 months, you are totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fitted by reason of education, training or experience – at Eaton Corporation or elsewhere ["Second Tier"].

[R.31]  Additionally, the LTD Plan requires that "[i]f you cannot work due to a mental illness or alcohol or chemical dependency, the physician who provides continuous care and verifies, to the satisfaction of the Claims Administrator, that you are totally disabled must be a psychiatrist."

[R.31]

The Plan also requires periodic certification of the participant's disability status, which can include an independent medical examination ("IME") and/or functional capacity evaluations ("FCE"). [R.36]  The Plan requires that a participant's disability be substantiated by objective findings as follows:

Objective findings of a disability are necessary to substantiate the period of time your physician indicates you are disabled.  Objective findings are those that can be observed by your physician through objective means, not just from your description of the symptoms.  Objective findings include:
- Physical examination findings (functional impairments/capacity);
- Diagnostic tests results/imaging studies;
- Diagnosis;
- X-ray results;
- Observation of anatomical, physiological or psychological abnormalities; and
- Medications and/or treatment plan.

[R.36]

Plaintiff Mitchell Kinder was employed by Eaton as a machinist responsible for operating a centerless grinder and case hardening machine. [R.50] Plaintiff's claim for continued LTD benefits is based upon his claim of depression and anxiety, chronic neck and back pain, cervical disk disease and hypertension. [R.50] Plaintiff received short term disability benefits for six

2

months under the Eaton Corporation Short Term Disability Program from March 5, 2002 through

September 2, 2002. [R.58, 101, 109] The Plan tentatively approved LTD benefits under the First

Tier definition of covered disability pending the results of an IME and FCE. [R.101]

On September 5, 2002, Plaintiff underwent an FCE (the "2002 FCE") to determine his

eligibility for LTD benefits under the First Tier definition of "Covered Disability," which would

determine his ability to return to his own occupation. [R.177] Although Plaintiff was unable to

complete his evaluation due to elevated blood pressure, the 2002 FCE results demonstrate that

Plaintiff gave reliable effort with 22 of the 24 consistency measures within expected limits.

[R.177].  During the 2002 FCE, Plaintiff demonstrated his ability to carry up to 20 pounds, stoop

and sit on a frequent basis; to walk, push and pull a cart up to 100 pounds, stand, crouch, kneel

and reach to his immediate left and right on an occasional basis; and lift in high, mid and low

range on a light level. [R.177] Based on an evaluation of Plaintiff's abilities as compared to the

job demands of his own occupation as a machinist at Eaton, the 2002 FCE concluded that "Mr.

Kinder demonstrated the ability to perform work at the light PDC as determined through the

Department of Labor over an eight hour day." [R.177]

Plaintiff received an IME on September 16, 2002 ("2002 IME") from Kenneth M.

Rosenzweig, M.D., who is board certified in the American Board of Orthopaedic Surgery and an

Independent Medical Examiner. [R.165-75]  After a physical examination and review of

Plaintiff's medical records, Dr. Rosenzweig noted a full range of motion with the shoulders with

positive apprehension on the right. [R.171] He reported a full range of motion of the hips, knees,

feet and ankles with no joint effusion or focal tenderness. [R.171] Plaintiff had satisfactory

forward flexion and extension, with pain, consistent with facet syndrome in connection with his

back evaluation. [R.171] With respect to the neck, range of motion was noted to be significantly

diminished – less then 50% in all ranges of motion. [R.171] Accordingly, with respect to

Plaintiff's level of functioning, Dr. Rosenzweig concluded as follows:

> That can be determined by functional capacity evaluation.  At this point, it would
> be sedentary or light level.  This examiner is not convinced that this case is
> closed.  It is felt that, with continued treatment and evaluation, an end point can be
> reach[ed] in his medical care that Mr. Kinder may be in a better position to be
> reconsidered for gainful employment.  Most likely, this would have to be more
> sedentary than as a heavy equipment operator.[R.174]

Because the First Tier provides coverage for a participant who is unable to work at his

own occupation at Eaton, based on the 2002 FCE and the 2002 IME findings, which determined

Plaintiff was capable of sedentary work, Broadspire approved Plaintiff for First Tier LTD

benefits effective September 3, 2002. [R.101] As provided in the LTD Plan, Broadspire routinely

reviews a participant's qualifications for receipt of disability benefits and may require an update

from the participant's physician to substantiate the claim. [R.36]

On September 18, 2003, the Claims Administrator specifically notified Plaintiff that it

would be gathering information to determine if he would be eligible for disability benefits under

the "any occupation" definition contained in the Second Tier of LTD benefits after the expiration

of his First Tier benefits on March 4, 2004. [R.93-94]  Although the records reflect that Plaintiff

treated with Dr. Patrick S. Chan in 2002, 2003 and 2004, Dr. Chan refused to complete an

Estimated Physical Abilities form, which requested detailed information regarding Plaintiff's

ability or inability to perform certain tasks within an eight hour day. [R.158]

A medical review prepared by Plaintiff's doctor, Michael Z. Chesser, dated May 31,

2002, describes Plaintiff's medical history, including a history of cervical fusions in

approximately March of 2002 and 1995, and continuing accounts of Plaintiff's subjective

complaints of pain, including chronic low back pain and pain in the anterior thigh and calf.

[R.199-201] Although Dr. Chesser reported that a previous MRI scan of the cervical spine

revealed disc herniation at C6-7 and an MRI of the lombosacral spine in November 2000,

revealed disc bulging at L3-4 and L4-5, his current evaluation noted normal gait and full strength,

bulk and tone in all four extremities. [R.199-201]

A July 15, 2002, EMG-nerve conduction velocity testing procedure produced the

following results:

> The right peroneal motor nerve conduction velocity study was normal, except for
> mild reduction of amplitude.  The right posterior tibial motor nerve conduction
> velocity study was normal.  The f-wave latencies were normal.  The right
> superficial peroneal sensory-study revealed normal conduction velocity, with very
> low amplitude response.  The right sural sensory study revealed absent response.
> EMG needle study revealed mild chronic denervation changes in the right tibialis
> anterior and gastrocnemius muscles. [R.198]

Dr. Chesser indicated that he did not think that Plaintiff could return to his previous occupation

because of complications with multiple medical problems, but did not provide an opinion as to

Plaintiff's ability to return to "any occupation." [R.198]

In an Eaton Long Term Disability Questionnaire, dated July 17, 2002, Plaintiff reported

suffering from chronic neck, shoulder and arm pain, and pain in the lower back.  He indicated an

inability to extend his arms, lift or do anything strenuous.  He reported no daily activities, but did

indicate that he was able to dress without assistance. [R.202-03] A report of cartoid duplex dated

September 12, 2002, reflected an abnormal study of the right and left carotid system due to less

then 40% stenosis of the right/left carotid artery.  In addition, vertebral arteries were identified

and reported to have anterograde flow. [R.163]

An Echocardiogram Report dated September 17, 2002, reported a normal echocardiogram with normal left ventricular systolic function with ejection fraction of 65 to 70%; no intracardiac source for emboli identified; and no valvular abnormalities were identified overall. [R.162] Also on September 17, 2002, Plaintiff received an MRI Without and With IV Contrast, which reflected no definite acute intracranial abnormality and a right maxillary sinus disease. [R.145]

On October 10, 2002, a cervical spine MRI documented Plaintiff's stable condition:

There is complete fusion of C5-C6 vertebral bodies which appears stable.  There has be[en] surgery at C6-C7 and a bone graph placed in the disc but there is no fusion of these two vertebra.  There is no evidence of compression of thecal sac via herniated disc or by bone fragment.  Neural foramlna appear normal. [R.161]

In a Kemper Resource Questionnaire dated September 25, 2003, Plaintiff indicated that he suffered from degenerative disc disease, which causes severe pain in his neck and back, and prevents him from engaging in any gainful employment, but he was able to take care of all his personal needs, such as bathing and dressing. [R.151-53]

In a September 24, 2003 Attending Physician's Statement, Daniel Davidson, M.D., indicated that Plaintiff suffered from neck pain/pseudoarthresia and degenerative disk disease (cervical and lumbar) and that Plaintiff's condition was complicated by failed cervical fusion. [R.156]  However, Dr. Davidson also noted that the most recent date that Mr. Kinder was treated for this condition was September 5, 2002. [R.156]

Plaintiff's January 7, 2004 cervical myelogram results note the following impressions:

1.      Degenerative osteophyte formation at C3-4 causing narrowing of the left neural forament and probable compression of the left L3 nerve rootlet. There is also accompanying effacement of thecal sac and some mild compressive effects on the spinal cord at that level.

6

2.      Spondylitic effects at C4-5 causing anterior effacement of thecal sac and compression of the spinal cord.  This also appears to be fairly mild.  There is no evidence of spinal canal stenosis at either the C3-4 or C4-5 level, however.

3.      Stable fusion level at C6-7.  No evidence of breakage of the hardware. [R.149-50]

Upon Broadspire's request, on March 18, 2004, Dr. William F. Blankenship, an

independent physician practicing in orthopedics, performed an examination of Plaintiff (the

"2004 IME). [R.133-137]  Dr. Blankenship determined that "this individual can safety perform

the activities as noted on the form in a normal 8 hour work day.  THIS IS BASED SOLELY ON

ORTHOPEDIC PROBLEMS AND NOT OTHER INCIDENTAL OR COINCIDENTAL

MEDICAL CONDITIONS.  This would put him in a medium category." [R.133-137]

Broadspire performed an Employability Assessment Report and a Labor Market Survey

on May 25, 2004, and June 4, 2004, respectively, to determine if any jobs existed for which he

was qualified and capable to perform. [R.120-132] During the Employability Assessment, Mr.

Kinder indicated that he is independent in activities of daily living and is able to perform

household tasks.  For example, he can maintain his lawn, use a rider mower, he drives in his local

area, and walks approximately one-half hour a day for exercise. [R.128] The Labor Market

Survey concluded that "[t]en full-time and two part-time employment opportunities exist in the

Searcy, Arkansas area for which it appears that Mr. Kinder is qualified." [R.123]

By correspondence dated June 23, 2004, Broadspire advised Plaintiff that the medical

evidence established that Plaintiff was capable of returning to the work force and, thus, he did

not satisfy the definition of "disabled from any occupation" under the Second Tier of the LTD

Plan. [R.207-09] The letter stated that Plaintiff's LTD benefits would cease effective after July 1,

2004, with the final check issued on June 22, 2004. [R.208] In order to provide Plaintiff with a

full and fair review, Broadspire informed Plaintiff of his right to appeal and encouraged Plaintiff

to submit additional objective medical evidence in support of any appeal. [R.208-09]

Plaintiff's attorney appealed Plaintiff's denial by correspondence dated December 16,

2004. [R.210-11] In connection with Plaintiff's appeal, Plaintiff submitted a report of Dr. James

M. Merritt, dated November 4, 2004, a consultation report by Dr. Reginald Rutherford, as well as

a FCE report from Tim Atkinson, Certified Functional Evaluator. [R.210-240] Dr. Merritt

concluded that:

> I would think that anyone would consider Mr. Kinder a risk to operate any
> machinery on medications of this sort.  Aside from this, I'm not sure how
> productive a worker Mr. Kinder would be with his pain.  Though we may achieve
> some pain relief with this present regiment; I would expect to the extent that he
> would be a productive physical laborer would be limited and he might well be
> limited cognitively as well. [R.229]

The FCE by Mr. Atkinson, dated December 6, 2004, concluded that "Mr. Kinder

demonstrated the ability to perform work at only the SEDENTARY Physical Demand

Classification as determined through the Department of Labor for an 8-hour day with the above

limitations and restrictions." [R.216]  Dr. Rutherford's report, dated December 8, 2004,

concluded that, based on the results of the FCE, "Mr. Kinder is unemployable in any capacity and

should be considered permanently and totally disabled." [R.214]

Broadspire also engaged three independent peer reviews to consider all evidence obtained

by and submitted to the Administrator in January 2005. [R.242-54] Ira Posner, M.D., a physician

specializing in pain management/orthopedic surgery, determined that the documentation did not

support an impairment that would preclude Mr. Kinder from returning to sustained work activity

at the any occupation level, and particular at the sedentary level. [R. 244].  Tamara Bowman,

M.D., a physician specializing in internal medicine/endocrinology, determined that "from an

internal medicine standpoint, there are insufficient objective clinical findings documented to

support a level of functional impairment that would render the claimant unable to perform any

occupation from 07/01/04 onward," and "[f]rom the standpoint of the claimant's diagnosis of

hypertension, there are no objective clinical findings documented to support any restrictions or

limitations." [R.249] She further noted that "[t]here is no documentation of any cognitive or

behavioral dysfunction in the claimant due to any of his medications that would impact his ability

to work." [R.249]  Henry Hirsch, M.D., a physician specializing in cardiology, found that "from

a cardiac standpoint, the submitted evidence does not support functional impairment for any

occupation from 07/01/04," "[no restrictions are required from a cardiac perspective," and Mr.

Kinder's medications should not impair him from working. [R.253]

        Based on Broadspire's review of the entire Administrative Record, including the medical

records submitted by Plaintiff in support of his appeal as well as the three independent peer

reviews, by correspondence dated January 28, 2005, Broadspire upheld its original decision to

deny continued LTD benefits under the Plan. [R.255-258] Broadspire again notified Plaintiff of

his right to appeal and also encouraged him to submit any additional objective medical evidence

in support of his appeal. [R.258]

        By letter dated July 29, 2005, Plaintiff's attorney appealed Broadspire's denial of benefits

and enclosed a copy of a neuropsychological evaluation prepared by Dr. Judy Johnson, a

psychologist, as well as a letter written by Dr. Rutherford. [R.259-64] She concluded that "with a

reasonable degree of psychological certainty, . . . Mr. Kinder would not be able to sustain any

meaningful work.  He is suffering from chronic pain, cognitive dysfunction, and the emotional

sequela of these problems as well as cognitive and emotional difficulties associated with his

medication regimen." [R.263]  Although Dr. Johnson cited numerous test results, she did not

include the tests themselves. [R.262] Dr. Rutherford's letter stated that Dr. Johnson's evaluation

corroborates his opinion "that Mr. Kinder is incapable for any form of gainful employment

related to physical, cognitive and emotional dysfunction." [R.264]

Broadspire obtained two additional peer reviews to review all the evidence in the record

including the most recent letters by Drs. Rutherford and Johnson. [R.267-276] On August 22,

2005, Leonard Schnur, Psy.D., a psychologist, issued a peer review, noting that Dr. Johnson

administered several self report inventories and that Dr. Johnson's psychological evaluation did

not include a diagnosis and did not document exam findings referring to the intensity, frequency

or duration of Plaintiff's symptoms. [R.267-271] Consequently, Dr. Schnur concluded that the

"documentation submitted for review fails to provide examination findings to support a

psychological impairment across the areas of cognitive, emotional and behavioral functions

which would preclude the claimant from performing a useful work capacity," and "does not

support a functional impairment from 7/1/04 through the present." [R.269] Dr. Robert Ennis, an

orthopedic surgeon, concluded that "the information does not support a functional impairment

that would preclude the claimant from working at any occupation from 7/1/04 through the

present time," and "[t]here is no indication that the medications the claimant is currently taking

would adversely affect his ability to be gainfully employed." [R.274]

Subsequently, Eaton retained two independent physicians to review Mr. Kinder's

medical records. [R.56] Trenton M. Gause, M.D., a physician board certified in orthopaedic

surgery, concluded that Plaintiff was not disabled from the Plan's any occupation definition after

7/1/04. [R.73]  Robert Polsky, M.D., a board certified psychiatrist, concluded that Mr. Kinder

"has not been demonstrated to be disabled due to psychiatric disorder after 7/1/04 according to

the Plan definition of any occupation." [R.67]

Eaton then conducted a final review of Plaintiff's LTD benefit claim, reviewing the file

without deference to any prior denials. [R.49-62] In a letter dated October 28, 2005, Eaton

concluded with respect to Plaintiff's claim of depression that Plaintiff had not satisfied the

requirement that he be deemed disabled due to mental illness by a psychiatrist or that he be under

the continuous care of a physician. [R.61] With respect to the degenerative disc disease, neck and

back pain and hypertension, Eaton determined that "the objective findings contained in the

medical records, functional capacity evaluations, peer reviews, and the independent medical

review do not support a finding of ongoing disability which would prevent Mr. Kinder from

performing any occupation as of July 1, 2004." [R.61] Therefore, Eaton certified the denial of

Mr. Kinder's disability benefits. [R.49-62]

## II.     Standard

An administrator's decision to deny benefits under an employee welfare plan is reviewed

*de novo*, unless the benefit plan gives the "administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber

Co. v. Brunch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).  When the benefit

plan gives the "administrator or fiduciary discretionary authority to determine eligibility for

benefits or to construe the terms of the plan," the district court's review is for an abuse of

discretion.  *Id.*; *Clapp v. Citibank, N.A. Disability Plan*, 262 F.3d 820 (8th Cir. 2001).

Plaintiff admits that the LTD Plan provides discretion to the Plan Administrator under

Section 4.2(b), as does the LTD Summary Plan Description (the "SPD") section entitled "Plan

Interpretation". [R.8, 46] However, Plaintiff asserts that a less deferential standard of review

should apply.  The Eighth Circuit has held that "some less deferential standard of review is

triggered where the claimant presents "material, probative evidence demonstrating that (1) a

palpable conflict of interest [or a serious procedural irregularity] existed, which (2) caused a

serious breach of the plan administrator's fiduciary duty to her."  *Schatz v. Mutual of Omaha Ins.*

*Co.*, 220 F.3d 944, 947 (8th Cir. 2000) (citing *Woo v. Deluxe Corp*, 144 F.3d 1157, 1160 (8th

Cir. 1998)).  "It is only after a claimant clears this initial 'two-part gateway requirement,' that we

apply the 'sliding scale' approach of determining just how much less deferential the nature of the

plan administrator's conflict warrants our being to the plan administrator's decision to deny

benefits."  *Id.* (citing *Woo*, 144 F.3d at 1161).

First, Plaintiff makes a general allegation that Defendants operated under "a conflict of

interest" that "ultimately created a serious breach of Defendants' duty to the Plaintiff."  "As a

general matter, when the insurer is also the plan administrator, [the Eighth Circuit] ha[s]

recognized something akin to a rebuttable presumption of a palpable conflict of interest."  *Id*. at

947-48 (citing *Barnhart v. UNUM Life Ins. Co.,* 179 F.3d 583, 587-88 (8th Cir. 1999)).  "Indicia

of bias can be negated by 'ameliorating circumstances,' such as 'equally compelling long-term

business concerns' that militate against improperly denying benefits despite the dual role."  *Id.* at

948 (citing *UNUM Life*, 179 F.3d at 588; *Farley v. Arkansas Blue Cross & Blue Shield,* 147 F.3d

774, 777 (8th Cir.1998)).  However, as discussed in *Payzant v. UNUM Life Ins. Co*, 402 F. Supp.

2d 1053, 1061 (D. Minn. 2005), "the Eighth Circuit has also stated that 'not every funding

conflict of interest . . . warrants heightened review because ERISA itself contemplates the use of

fiduciaries who might not be entirely neutral,' *Tillery v. Hoffman Enclosures, Inc.,* 280 F.3d

1192, 1197 (8th Cir. 2002), and 'it is wrong to assume a financial conflict of interest from the

fact that a plan administrator is also the insurer.' *McGarrah v. Hartford Life Ins. Co.,* 234 F.3d

1026, 1030 (8th Cir. 2000)."

"The Eighth Circuit has not definitively determined whether the plaintiff has the burden

of producing actual evidence of a financial conflict, or whether the defendant, after the plaintiff

has alleged that the defendant is both the insurer and the administrator, has the burden of

producing evidence to rebut the presumption of conflict of interest." *Id*. (comparing *McGarrah,*

234 F.3d at 1030, *with Schatz,* 220 F.3d at 947-48, *and Phillips-Foster v. UNUM Life Ins. Co. of*

*America,* 302 F.3d 785, 795 (8th Cir. 2002), *and Torres v. UNUM Life Ins. Co. of America,* 405

F.3d 670, 678 (8th Cir. 2005)).

Here, Plaintiff makes the bare allegation that Defendants operated under a conflict of

interest.  Defendant provides the affidavit of James Hrivnak, a Senior Manager of Health and

Welfare at Eaton, which states that funding of the LTD Plan only constitutes .009% of Eaton's

annual operating costs.  Therefore, Defendant asserts that the Plan has no impact on Eaton's

financial stability and any benefit denials do not provide any material benefit to the company.

Also, Defendants argue that Eaton's fiduciary obligation and objective to properly and

consistently administer its Plan outweighs any incentive to deny claims based on financial

objectives, as the financial impact of paying benefits to Plaintiff is negligible given Eaton's size.

Defendants also argue that the compensations and performance reviews of the Eaton employees

who are involved in the claims process are not affected in any way by the number of approvals or

denials under the LTD Plan.  Defendants further argue that it has an incentive to provide quality

benefits to remain competitive as an employer in the market.  The Court declines to find that a

conflict of interest existed in this case.

Plaintiff also alleges that throughout the application, denial, and appeals process, the

Defendants committed serious procedural irregularities which caused a serious breach of the

Defendants' fiduciary duty to the Plaintiff.  "For heightened review to apply, a beneficiary

claiming procedural irregularity must show that the plan administrator, in the exercise of its

power, acted dishonestly, acted from an improper motive, or failed to use judgment in reaching

its decision." *LaSalle v. Mercantile Bancorporation, Inc. Long Term Disability Plan*, 498 F.3d

805, 809 (8th Cir. 2007).  "The alleged procedural irregularity must have some connection to the

substantive decision reached by the administrator, and give rise to 'serious doubts' about whether

the result reached was the product of 'an arbitrary decision' or 'whim,' before [the Court will]

vary from the usual standard of review."  *Id*.

Plaintiff specifically asserts that Defendants' reliance upon a 2002 FCE in its June 23,

2004, January 28, 2005, and October 28, 2005 denials are "irregularities that prove lack of faith

and integrity in the decision making process.  Plaintiff further states that at the time of the June

23rd denial, there was only one partially completed functional capacity evaluation, which was

performed almost two years earlier, on September 5, 2002, and for the purpose of determining

Plaintiff's ability to return to his own occupation, not any occupation.

Plaintiff also asserts that Defendants' reliance upon the inconsistent and conflicting

Employability Assessment Report and Labor Market Survey constitutes a serious procedural

irregularity.  Plaintiff states that three of the ten potential positions identified in the report would

require Plaintiff to drive almost 50 miles one-way, while Plaintiff clearly stated that he cannot

drive beyond the local Searcy area.  Plaintiff also states that five of the remaining seven positions

are for machine operators, and Dr. Merritt's report specifically stated that it would be a risk for

Plaintiff to operate machinery on his medications.  Plaintiff further states that the two remaining

potential positions require extended periods of standing, Plaintiff stated that he cannot stand for

long periods of time, and the employers either indicated that they did not anticipate hiring in the

near future, or that no hiring has occurred in several years. [R.123-25]  Plaintiff further contends

that Defendants improperly discounted Plaintiff's treating physician's medical opinions, and

disregarded Dr. Rutherford's medical evaluation.  Finally, Plaintiff contends that five out of the

seven physicians enlisted by Defendants to perform medical peer reviews reached their

conclusions based upon their particular speciality, and none of them specialized in neurology.

Plaintiff states that Dr. Rutherford gave a neurological medical opinion, which was not

challenged or contradicted by another neurologist.

Plaintiff's contentions are without merit because they reflect substantive disagreements

with the Defendants' analysis of the administrative record, not procedural irregularities.

Procedural irregularities are "the sorts of external factors that are sufficient under the common

law of trusts to call for application of a less deferential standard of review." *Weidner v. Federal*

*Exp. Corp.*, 492 F.3d 925, 928 (8th Cir. 2007) (holding that disregarding the opinion of

plaintiff's treating physician, failing to consider that plaintiff was granted Social Security

disability benefits, and relying on an outdated functional capacity assessment did not constitute

procedural irregularities).

Here, as in *Weidner*, the record discloses nothing irregular in the Defendants' gathering and considering the substantive evidence. *Id*. at 928-29.  Plaintiff has not disputed the fact that the opinions of Plaintiff's treating physicians and Dr. Rutherford's report were reviewed by Defendants.  In fact, Plaintiff admits that Defendants reviewed the entire Administrative Record, including the medical records submitted by Plaintiff in support of his appeal. [R.255] Also, the Court does not agree that the failure of Defendants to employ a neurologist constitutes a serious procedural irregularity, as this is not a case in which some "uncommon disease" is at issue. *See Morgan v. UNUM Life Ins. Co. of America*, 346 F.3d 1173, 1177 (8th Cir. 2003) (citing *Clapp v. Citibank, N.A. Disability Plan*, 262 F.3d 820, 827 (8th Cir. 2001) (holding that Aetna's failure to have either a cardiologist or rheumatologist review plaintiff's claim constituted a procedural irregularity under *Woo*)).  Defendants engaged multiple peer reviews to inform its decision.  Furthermore, Defendants were entitled to rely on the opinions of the other reviewing physicians who gave contrary opinions. *Hunt v. Metropolitan Life Ins. Co.*, 425 F.3d 489, 491 (8th Cir. 2005).

However, even if a palpable conflict of interest or a serious procedural irregularity existed, Plaintiff has not presented material, probative evidence that such conflict of interest or procedural irregularity actually caused a serious breach of the plan administrator's fiduciary duty to him.  The Eighth Circuit has noted that the second part of the gateway test "presents a considerable hurdle for plaintiffs." *Payzant*, 402 F. Supp. 2d at 1061 (citing *UNUM Life*, 179 F.3d at 588 n.9).  "The evidence offered by the claimant must give rise to 'serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim.'" *Id.* (citing at *UNUM Life*, 179 F.3d at 589; *Layes v. Mead Corp.,* 132 F.3d 1246, 1250

(8th Cir.1998)).  Mere disagreement with the Defendants' decision is not enough.  *Anderson v.*

*U.S. Bancorp*, 484 F.3d 1027, 1034 (8th Cir. 2007).

The circumstances of this case are dissimilar to those circumstances where the Eighth

Circuit has found a serious breach of the plan administrator's fiduciary duty.  *Id*. (citing *Janssen*

*v. Minneapolis Auto Dealers Benefit Fund,* 447 F.3d 1109, 1113 (8th Cir. 2006) (no meaningful

review by plan trustees where decision was reached without adequate information and Plan failed

to explain to claimant the plan provisions upon which its decision was based); *Harden v. Am.*

*Express Fin. Corp.,* 384 F.3d 498, 499-500 (8th Cir. 2004) (plan administrator misled claimant

as to records which were part of the administrative record being considered); *Tillery v. Hoffman*

*Enclosures, Inc.,* 280 F.3d 1192, 1196 (8th Cir. 2002) (plan administrator's failure to provide

timely notice of the denial of benefits recognized as a serious procedural irregularity); *Morgan v.*

*Contractors, Laborers, Teamsters & Eng'rs Pension Plan,* 287 F.3d 716, 722-23 (8th Cir. 2002)

(trustees of pension plan violated plan provisions by withholding relevant information from

claimant prior to appeal hearing; trustees denied claim based upon their own "preconceptions and

personal observations").  Here, Defendants clearly reviewed the information before them, set

forth their findings at each stage, and informed Plaintiff of his appeal rights.  Having reviewed

the record carefully, the Court is satisfied that Defendants did not commit a serious breach of

fiduciary duty caused by any conflict of interest or procedural irregularity.  Therefore, the abuse

of discretion standard applies.[1]

---

[1]The Court notes that even if it had applied a less deferential standard of review, the Court would still find that Defendants met their burden in this case.

**III.     Discussion**

"Review of an administrator's decision under an abuse of discretion standard, though

deferential, is not tantamount to rubber-stamping the result." *Torres v. UNUM Life Ins. Co. of*

*America*, 405 F.3d 670, 680 (8th Cir. 2005).  "On the contrary, [the Court] review[s] the decision

for reasonableness, which requires that it be supported by substantial evidence that is assessed by

its quantity and quality." *Id*.  This review employs five factors:

> (1) whether the administrator's interpretation is consistent with the goals of the
> Plan; (2) whether the interpretation renders any language in the Plan meaningless
> or internally inconsistent; (3) whether the administrator's interpretation conflicts
> with the substantive or procedural requirements of the ERISA statute; (4) whether
> the administrator has interpreted the relevant terms consistently; and (5) whether
> the interpretation is contrary to the clear language of the Plan.

*Id*.   However, if neither party disputes the administrator's interpretation of the Plan, the five-

factor test is not instructive.  *Farley v. Arkansas Blue Cross and Blue Shield*, 147 F.3d 774, 777

n.6 (8th Cir. 1998).  Instead, the "substantial evidence" standard is applied.  *Id*.   The Court

considers "only the evidence that was before the administrator at the time the claim was denied,"

but does not substitute its own weighing of the evidence for that of the administrator.

Plaintiff argues that the five-factors are instructive because he disputes the administrator's

interpretation of the plan.  Plaintiff states that denial of Plaintiff's benefits after submitting

medical documentation to support his disability is inconsistent with the Plan's goal of providing

employees with benefits if they become disabled and renders the language of the Plan

meaningless.  Plaintiff notes that the physicians who issued peer reviews were asked if the

Plaintiff was disabled from "any occupation," rather than whether Plaintiff was "unable to

engage in any occupation or perform any work for compensation or profit for which [he was], or

may become, reasonably well fitted by reason of education training or experience - at Eaton

Corporation or elsewhere." Plaintiff also state that the use of the 2002 FCE in the initial and

subsequent denials is inconsistent with the Plan's goals because Defendants should be held to the

same standard as the beneficiary with regard to acquiring updated information.

Plaintiff relies upon the report of Dr. Merritt to support his assertion that he is unable to

work. Additionally, Plaintiff relies upon the report of Dr. Rutherford, which did not have

adequate documentation to support the assertion that Plaintiff could not perform any occupation,

and a letter from Dr. Rutherford submitted on appeal. Plaintiff also relies upon the report of a

psychologist.

However, the 2004 FCE by Mr. Atkinson, Plaintiff's own submission, concluded that

Plaintiff could perform sedentary work for an 8-hour day with specified limitations and

restrictions. Also, the 2002 FCE and Dr. Rosenzweig's IME in 2002 indicate that, even at that

point, Plaintiff could perform sedentary or light work. The 2004 IME by Dr. Blankenship

concluded that Plaintiff could perform medium work. The three 2005 peer reviews requested by

Broadspire during the first appeal, performed by Drs. Posner, Bowman, and Hirsch, concluded

that Plaintiff was not prevented from performing any occupation. During the second appeal,

Broadspire ordered two more peer reviews, performed by Drs. Schnur and Ennis, which

concluded that Plaintiff was not prevented from performing any occupation. Finally, for

purposes of the final review, Eaton had two independent physicians review the record. Dr. Gause

and Dr. Polsky, a psychiatrist, concluded that Plaintiff was not disabled.

After a thorough review of the record in this case, the Court finds that Defendants'

decision to deny Plaintiff long term disability benefits under the Plan was not an abuse of

discretion. While the Court does not doubt that Plaintiff was disabled from his own occupation

under the First Tier, as Defendants acknowledged through an award of benefits through that

period, the decision of the Defendants denying Plaintiff's claim beyond that point was supported

by substantial evidence and the decision offered a reasoned explanation based upon the evidence.

Accordingly,

IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment (Docket

No. 12) shall be, and is hereby, GRANTED.

IT IS SO ORDERED THIS 4th day of December, 2007.


/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE